395 So.2d 770 (1981)
STATE of Louisiana
v.
Charles CLAIBON.
No. 80-KA-2081.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, William Weatherford, Asst. Dist. Attys., for plaintiff-appellee.
M. Michele Fournet, Asst. Public Defender, for defendant-appellant.
*771 CALOGERO, Justice.[1]
On July 6, 1979, defendant Charles Claibon was a member of a parish work crew assigned to clean drainage ditches in Baton Rouge. On that date defendant killed Tyrone Converse, first stabbing him with a butcher knife and later cutting him across the neck with a swing blade, a tool used in cutting weeds. The grand jury indicted defendant for first degree murder, which indictment the district attorney later amended to charge second degree murder in violation of R.S. 14:30.1. Defendant entered a plea of "not guilty and not guilty by reason of insanity." The jury trial resulted in a ten to two verdict of guilty as charged. The trial judge denied defendant's motion for a new trial and imposed a sentence of life imprisonment at hard labor without benefit of probation or parole. On appeal to this Court, defendant argues that he proved by a preponderance of the evidence that he was legally insane at the time of the crime.
Both defendant and the victim were members of the ditch cleaning crew. Other members of the crew testified at trial regarding the events which occurred that morning. The entire group had ridden to the work area on a truck owned by the city-parish government. During the ride, several people observed that defendant had two butcher knives hidden in his work boots. One person testified that defendant said he had the knives because "he didn't want nobody fooling with him." Defendant had been involved in a fight with another crew member the day before the homicide.
No one saw the original stabbing, but several people heard the victim scream and saw him bleeding profusely from wounds in his chest. Defendant, who had been behind the work truck with the victim, returned to the drainage ditch. A short time later, defendant left the ditch and joined the group standing around the victim waiting for medical assistance and for the police to arrive. Defendant mumbled something and picked up a swing blade which was leaning against a nearby tree. Defendant approached the victim and cut him across the neck with the swing blade, nearly decapitating him, and then returned the blade to its resting place against the tree. Defendant looked at another crew member, told him that he was "next" and began to chase him down the street. After running a short distance, defendant removed his work boots and continued the chase for a few blocks. Crew members testified that in their opinion defendant removed his boots because it was too difficult to run in the boots, which were loose and quite heavy. Defendant returned to the group near the victim and asked whether anyone had money he could have. About this time, the group heard sirens approaching, and defendant, in his stocking feet, left in the direction opposite that from which the sirens were coming. Defendant asked a long-time friend to "get his slippers out of the truck and take them home." Defendant, however, did not go home when he left the scene of the crime.
The police located defendant shortly after the crime, arrested him and transported him to the police station. The arresting officers variously described defendant as one of the most cold-blooded individuals, or the most cold-blooded individual they had ever arrested. All witnesses testified that defendant appeared rather emotionless during the events of the day, but also noted that he looked much the same that day as he did during the trial.
*772 In Louisiana a defendant is presumed sane and the state is not required to prove sanity. R.S. 15:432.[2] A defendant who wishes to negate the presumption must put forth an affirmative defense of insanity and prove his insanity by a preponderance of the evidence. C.Cr.P. art. 652; State v. Roy, 395 So.2d 664 (La.1981). Legal insanity in Louisiana means that a defendant has a mental disease or defect which prevents him from distinguishing right from wrong with reference to the conduct which forms the basis for the criminal charge against him. R.S. 14:14. The determination of sanity is a factual matter reserved to the jury or other fact finder. Therefore, this Court traditionally did not review the rejection of an insanity defense where there was "some evidence" supporting the finding that defendant was not insane, because the Court is limited by the Constitution to review of questions of law. La.Const. of 1974, Art. 5, § 5(C).
Recently, however, the United States Supreme Court decided Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979), and rejected the "no evidence" standard of review when a state prisoner asserts a habeas corpus claim that the state convicted him with insufficient evidence after he entered a plea of not guilty by reason of insanity. According to the United States Supreme Court the proper standard for reviewing the conviction is that of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Following the dictates of Moore, this Court decided State v. Roy, supra, in which we adopted the Jackson standard of review when a defendant pleads the affirmative defense of insanity and claims that the record evidence does not support a finding of guilty beyond a reasonable doubt. Using the Jackson standard we must determine whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense.
Defendant moved for the appointment of a sanity commission to determine his competency to stand trial and his mental capacity at the time of the offense. The two members of the commission reported that defendant was able to assist his attorney and competent to stand trial,[3] although defendant did suffer from schizophrenia of the paranoid type. The commission members and another psychiatrist testified at trial as witnesses for the defense.
Dr. George Bishop first examined defendant at the parish prison two weeks after the crime. At this time, Dr. Bishop related, defendant was hearing voices. Dr. Bishop administered a major antipsychotic drug, Haldol, during the interview, and ordered that the medication be repeated on a regular basis. Three days later Dr. Bishop again saw defendant. Defendant was responding to the medication but Dr. Bishop increased the dosage because defendant was still hearing voices. During this interview, defendant told Dr. Bishop that the voices of the prior week (two weeks after the homicide) had told him to "kill that man." Dr. Bishop saw defendant several more times, but made no attempt at any time to determine whether he knew right from wrong at the time of the crimethe legal test for insanity in Louisiana.
Dr. Francisco A. Silva examined defendant on October 18, 1979, in his capacity as a member of the sanity commission. This examination lasted less than one hour. At trial, Dr. Silva testified that he concluded that defendant was legally insane at the time of the crime. Dr. Silva further testified that he has reached such a conclusion for less than one percent of the defendants he has examined. Dr. Silva admitted that he did not reach his decision regarding defendant's *773 insanity on the basis of the interview alone although defendant told the doctor that at the time of the crime voices were telling him to kill. Dr. Silva's assessment of defendant's mental condition was predicated upon his study of the records of defendant's prior commitments to East Louisiana State Hospital as well as his personal examination of defendant. These records indicated that defendant's three civil admissions to that hospital were for paranoid schizophrenia with delusions. Dr. Silva especially noted that three days before defendant's June 21, 1979, release from Jackson, he had been involved in a violent confrontation with another patient. According to Dr. Silva, this indicated that defendant should not have been released from the hospital because he was still unable to function in society. Dr. Silva suggested that defendant might have secured his release by "conning" the examiner because hospitalized patients learn, as a result of repeated questioning, to give the expected answers and to act like all is well in order to be released from confinement.
On cross-examination by the prosecutor, the doctor admitted that his letter to the judge written after his examination of defendant's records from Jackson did not state an unequivocal view that defendant was legally insane at the time of the crime; rather, the letter stated, he admitted, that there was a "good possibility that the crime for which he [defendant] is charged was a result of this illness." That the crime is a result or product of defendant's mental condition is the Durham[4] test for insanity used in some jurisdictions. As discussed above the Durham test is not the Louisiana test. The test for legal insanity in Louisiana is whether defendant could distinguish right from wrong with reference to his conduct at the time of the crime.
The third defense witness was Dr. Hypolite Landry, coroner for East Baton Rouge Parish. Dr. Landry's examinations of defendant pre-dated the crime, for Dr. Landry had been involved in defendant's three civil commitments to East Louisiana State Hospital. Additionally, Dr. Landry served as a member of the sanity commission to determine defendant's competency to stand trial. Of the three doctors, Dr. Landry was the first to see defendant after the crime, having visited him in jail at the request of the family on July 10, 1979, and at the request of the warden on July 18, 1979. The doctor's notes from the second visit state that defendant had related that he would "do away with people who got in his way." Defendant told Dr. Landry about his fight with a co-worker the day before the crime and that he had taken the knives to work because another fellow-worker had threatened him. Regarding the homicide, defendant said that the victim swung at him with a knife which defendant took away from him, that he stabbed the victim,[5] and that several minutes later voices told him to kill the victim so he "chopped [the victim's] neck off." Defendant, according to Dr. Landry, had not heard the voices instructing him to kill the victim, until after the initial (and fatal) stabbing.
As we explained earlier in this opinion, in Louisiana a defendant is presumed sane, R.S. 15:432, and has the burden of proving his insanity by a preponderance of the evidence, C.Cr.P. art. 652; State v. Roy, supra; State v. Weber, 364 So.2d 952 (La.1978). The case before us is factually distinguishable from Roy. We reversed Roy's conviction because our review showed that he had proved his insanity by a preponderance of the evidence and that no rational fact finder could have found him sane on the record evidence.[6] Roy had been found incompetent *774 to stand trial by the commission appointed to examine him. Roy's mental condition was so poor that it had been necessary to hospitalize him for a period of time rather than keep him in prison the entire time that he was awaiting trial. All medical experts in the Roy trial testified without qualification that he was incapable of distinguishing right from wrong at the time he killed the victim in that case.
The case before us contains similarities to Moore v. Duckworth, supra. In Moore, as in the instant case, only the defense put on expert witnesses. In Moore two psychiatrists testified that the defendant was insane. Moore v. State, 260 Ind. 154, 293 N.E.2d 28 (1973). Nevertheless, the United States Supreme Court affirmed Moore's conviction because the lay testimony introduced by the state was "fully sufficient to support a jury finding beyond a reasonable doubt that the petitioner was sane at the time of the killing." 443 U.S. at 714, 99 S.Ct. at 3090. However, as we stated earlier in this opinion, Moore did hold that due process requires that the Jackson standard be used to review a finding that defendant was sane at the time he committed the crime with which he is charged.
In the case at bar there is an abundance of evidence, albeit lay, that defendant was sane at the time he stabbed the victim. One of the state witnesses was a friend who had known defendant since junior high school. This witness told of the fight between defendant and a fellow-worker the day before the stabbing and of defendant's telling him that he had the knives because he didn't want anyone "fooling" with him. Other witnesses testified that defendant was acting in his normal manner the morning before the crime. When questioned, all witnesses stated that defendant looked the same at the defense table during the trial as he had before and after the homicide. One arresting officer described defendant as "cold-blooded." Additionally, there was testimony by another officer that defendant did not act like other people he had arrested who were later determined to be insane.[7] The sanity commission found that defendant was competent to stand trial.
In this case, as opposed to Roy and Moore, only one psychiatrist testified without qualification that defendant was legally insane at the time of the crime. Furthermore, that expert witness, on cross-examination, was shown to have given an earlier opinion regarding defendant's insanity which does not qualify under the Louisiana test.
Considering the totality of the record evidence in the light most favorable to the prosecution, we determine that a rational trier of fact could have found that defendant did not prove his insanity by a preponderance of the evidence.

Decree
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Judges Grover L. Covington, Remy Chiasson, and Elmo E. Lear, of the Court of Appeal, First Circuit, participated in this decision as Associate Justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., James L. Dennis, and Fred A. Blanche, Jr.

This defendant, as well as the defendant in State v. Bell, No. 80-K-2151, 392 So.2d 492, heard the same day, challenged the composition of the Court alleging that this Court is without jurisdiction to appoint judges from the Courts of Appeal to sit as ad hoc judges for the review of criminal cases. In a separate opinion, authored by the Chief Justice and rendered on February 5, 1981, the permanent members of the Court ruled unanimously that this Court's authority to "assign judges to assist other courts than their own within the judicial branch in furtherance of the administration of justice is explicit and unfettered," citing Article 5, § 5(A), of the Louisiana Constitution of 1974.
[2] In Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the United States Supreme Court upheld the constitutionality of a similar presumption against a due process attack.
[3] Neither report addressed the question whether defendant could distinguish right from wrong at the time of the crime.
[4] Durham v. United States, 214 F.2d 862 (D.C. Cir.1954).
[5] Dr. Landry, in his capacity as coroner, testified during the state's case that the victim died from the initial stabbing and was already dead at the time defendant inflicted the neck wound.
[6] While this was the language used in the majority opinion, we noted in our per curiam denial of the state's application for a rehearing that a more exact expression of the standard of review would, as we construe the requirements of Moore, supra, involve a focus upon defendant's having the burden to prove insanity by a preponderance of the evidence, namely that "a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could not have concluded that defendant had failed to prove by a preponderance of the evidence that he was insane at the time of the offense."
[7] On the other hand one officer did express to defense counsel his belief that defendant was insane for the reason that defendant showed very little emotion when arrested.