471 So.2d 277 (1985)
STATE of Louisiana
v.
Benjamin BELL.
Nos. KA-2329, KA-2330.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1985.
*278 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Pamela S. Moran, Patricia E. Black, Asst. Dist. Attys., New Orleans, for plaintiff-appellee, State of La.
Dwight Doskey, Orleans Indigent Defender Prog., New Orleans, for defendantappellant, Benjamin Bell.
Before SCHOTT, KLEES and ARMSTRONG, JJ.
KLEES, Judge.
Benjamin Bell was charged by grand jury indictment on July 31, 1980, with the second degree murder of Gail Chandler in violation of LSA-R.S. 14:30.1. One day later, he was charged by bill of information with attempted second degree murder of Mary Chandler in violation of LSA-R.S. 14:27 (30.1). In a judge trial, the court found Bell guilty as charged on both counts. On the second degree murder charge, Bell was sentenced to life imprisonment at hard labor with credit for time served; on the attempt charge, Bell was sentenced to twenty years with credit for time served. We affirm the conviction and sentence of Benjamin Bell.

FACTS:
Benjamin Bell was the boyfriend of Gail Chandler. On June 13, 1980, he appeared at the Chandler home and requested to see Gail. Mary Chandler, Gail's mother, replied that Gail was not at home. Bell told Mrs. Chandler he had something to give to Gail. At that point, he pulled out a gun. Mrs. Chandler went into another room in the house to call the police. Bell followed and prevented her from making the call. When Mrs. Chandler closed a door between them, Bell shot through the door, hitting Mrs. Chandler in the right side.
Bell returned to the Chandler house on July 16, 1980. Soon after midnight, he shot Gail Chandler on the front porch, killing her. He flagged down Officer Vera Harris of the New Orleans Police Department at 2:25 a.m. as she drove in the 1700 block of Tulane Avenue. He told her that they were looking for him and that he shot someone. Officer William Panter, Officer Harris' partner, advised him of his rights and placed him under arrest. At the homicide office, Officer John Dillman again advised Bell of his rights.
Bell told Officer Dillman that after he shot Gail, he hid the gun underneath a house on DeSaix Boulevard. Officers Dillman and Suzeneau accompanied Bell to the house where they recovered the weapon.
Upon their return to the homicide office, Bell gave a confession in which he stated *279 that he had gone to the Chandler home on June 13 with the specific intent to kill Gail Chandler. He stated that in an ensuing struggle Mary Chandler was shot by her father. He further stated that he returned to the Chandler home on July 16 to retrieve the shotgun he had buried underneath the front porch. He then went into a trance and when he heard a car door slam, he climbed from underneath the porch and shot Gail Chandler. Bell has consistently maintained that he has amnesia for the recited events.
After his arraignment on August 22, 1980, Bell withdrew his former pleas on both charges of not guilty and entered pleas of not guilty and not guilty by reason of insanity. Then he filed an application for appointment of a Lunacy Commission. The court ordered the commission and appointed Doctors Super and Cox to examine Bell. On October 1, 1980, the lunacy hearing was held, and the court found Bell unable to assist his counsel and to appreciate the consequences of the proceedings. Bell appeared for a second hearing on July 30, 1981 and the court found the same result. On March 18, 1982, the court found Bell legally sane, but on July 27, 1982, the court found him legally insane, unable to proceed to trial, unable to assist counsel, and unable to understand the nature of the proceedings against him. On December 13, 1983, the court again found Bell competent to proceed to trial. On March 14, 1984, a trial was held as to both counts.
At trial, the two psychiatrists appointed to the Lunancy Commission, Doctors Aris Cox and William Super testified that they had both had several opportunities over the three years since the murder to examine Bell. Cox testified that Bell was not psychotic and that he knew the difference between right and wrong when he committed the acts of June 13, 1980 and July 16, 1980. Cox further testified that Bell had mild mental retardation and that at times he had diagnosed Bell as having episodic discontrol. He explained that "episodic discontrol is a syndrome that occurs in people who have had certain damage to certain areas of the brain, in which they are prone to have outbursts of aggressive or violent behavior for which they are amnesic later." However, Cox stated that the EEG's and CAT scanners, which normally can detect episodic discontrol, were negative. Furthermore, Cox explained that many points, some of which were learned from discussions with Bell's family, about his behavior are inconsistent with episodic discontrol. He testified that he believed Bell's acts to be consistent with pre-planning and pre-motivation, and that his amnesia is a result of his suppressing a painful experience.
Dr. Super testified that Bell was not psychotic and that he did not discover evidence of episodic discontrol. He further stated that it was his opinion that Bell knew the difference between right and wrong at the time of the alleged offense.
Officers Harris and Dillman both testified that Bell appeared calm when they spoke with him on the night of the crime.
The defense presented two of Bell's sisters. One, Sara Price, testified that Bell is prone to rage, sometimes has uncontrollable "convulsions," had been a problem to the family since childhood, and had once appeared to forget who she was. The other sister, Anna Veal, stated that Bell had periods of being upset and that he sometimes had convulsions.
The defense then presented a psychiatrist, Dr. Dennis Franklin, who testified that Bell was referred to him in August of 1982. Dr. Franklin described the symptoms of episodic discontrol. He stated that his diagnosis is that Bell does suffer from episodic discontrol, but there remains a question in his mind as to whether the criminal acts were a result of the condition. He explained that neurological amnesia results from episodic discontrol and that with that sort of amnesia, one does not remember the accident immediately after its occurrence only to forget it later. He explained that psychogenic amnesia is to be contrasted with neurological amnesia, psychogenic amnesia occurring when something is so unpleasant to the person that he can force it from his consciousness. He *280 also explained that the acts described in Bell's confession were fairly complex since the shotgun had to be unburied and loaded and that such complexity was not consistent with an attack of episodic discontrol.
After trial, Bell waived all legal sentencing delays. The trial judge sentenced Bell on both counts, which sentences were to run concurrently. The court further recommended that Bell be given psychiatric treatment during incarceration. On the day of trial, Bell filed an oral motion for appeal.

LAW:
LSA-R.S. 14:30.1 provides that the mandatory sentence for a conviction of second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. In the second degree murder case, however, Bell was sentenced to life imprisonment with credit for time served. No mention was made of parole, probation, or suspension of sentence. Thus, an error patent favorable to the defendant exists.
In State v. Jackson, 452 So.2d 682 (La. 1984), the Supreme Court of Louisiana held that:
... [T]here is a fundamental precept in appellate procedure that when a party exercises his right to appeal, the appellate court should not, by taking cognizance of an issue not properly raised by either the appellant or the appellee, render a judgment on appeal which is less favorable to the appellant than the judgment from which the appeal was taken. This precept is particularly applicable in the case of appeals by defendants in criminal cases. Jackson supra, at 683.
In that case, the trial judge imposed a sentence without mentioning the denial of parole eligibility required by statute. The court of appeal corrected the sentence itself. The Supreme Court reversed stating:
... [W]hen a defendant alone appeals and the record contains a patent error favorable to the defendant, the appellate court should ignore the error, unless the prosecution, having properly raised the issue in the trial court, has sought appellate review. Jackson supra, at 684.
Despite Jackson's clarity, the law on point is not now forthright due to a recent amendment of Article 882 of the Louisiana Code of Criminal Procedure, Acts 1984, No. 587. The article now provides for the correction of a sentence by the Appellate Court. Thus, it is not clear whether an appellate tribunal may correct an illegally lenient sentence on its own motion, or whether the sentence review must be applied for by either the defense or the state. In the case at bar, neither the state nor the defense has requested a review of the sentence.
This Court in State v. Sennette, 462 So.2d 675, (La.App. 4th Cir.1984), found that Jackson, supra, still controls and requires that it ignore any error favorable to the defendant. Other recent decisions by this court on point appear to be in conflict. In State v. Davis, 463 So.2d 733, (La.App. 4th Cir.1985) (Barry dissenting), and in State v. Browder, 471 So.2d 726 (La.App. 4th Cir. 1985), a panel of this Court found that Jackson, supra, mandated that an appellate court ignore an error patent favorable to the defendant unless the state seeks review of the error.
However, in State v. Liddell, 463 So.2d 678 (La.App. 4th Cir.1985) (Lobrano dissenting), this Court found that the Louisiana Legislature, by Acts 587 of 1984, legislatively overruled Jackson, supra. In Liddell, supra, the panel found that the trial court's failure to state that the defendant's sentence was to be served without benefit of parole, probation or suspension of sentence was an error patent correctable by an Appellate Court on an errors patent review. Accordingly, the panel amended the defendant's sentence for armed robbery to provide that the sentence must be served without benefit of parole, probation, or suspension of sentence. State v. Sennette, supra, was the first case from this court and controls unless and until overruled by the court en banc. Since the Louisiana Supreme Court has yet to consider this issue, we adhere to the principles of State *281 v. Jackson, supra, and will not correct this sentence.
In his assignment of error, Bell alleges that his affirmative defense of insanity should have prevailed.
In assessing the sufficiency of evidence to support a conviction in a direct evidence case, the reviewing court must determine whether, reviewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). The Louisiana Supreme Court applied the Jackson v. Virginia, supra, standard to the affirmative defense of insanity in State v. Roy, 395 So.2d 664 (La.1981). Thus, the standard of review when a defendant pleads the affirmative defense of insanity is "whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense." State v. Claibon, 395 So.2d 770, 772 (La.1981). In Claibon, supra, the Supreme Court found the evidence sufficient even where the prosecutor presented no expert witnesses.
In this case, two expert witnesses, Drs. Cox and Super, both of whom were appointed to the lunacy commission that examined Bell, testified that Bell was capable of determining right from wrong at the time of the attempted murder of Mary Chandler and of the murder of Gail Chandler. Although the defense presented an expert witness, Dr. Franklin, who testified that Bell suffered from episodic discontrol, the psychiatrist was unwilling to state that Bell was suffering from an episodic discontrol seizure at the time of the offense. In fact, he stated that many points about the two events suggested that Bell was not suffering from such a seizure when he committed the acts. State v. Noble, 425 So.2d 734 (La.1983). Thus a rational trier of fact could have determined that viewing the evidence in the light most favorable to the prosecution, the defendant did not prove by a preponderance of the evidence that he was insane at the time of the offenses. State v. Felde, 422 So.2d 370 (La. 1982); cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Brogdon, 426 So.2d 158 (La.1983).
To support a conviction under R.S. 14:30.1(1), the state must prove that (1) a human being was killed (2) when the offender had specific intent to kill or inflict great bodily harm. In this case with respect to the first element, Gail Chandler died as a result of a shotgun blast that Bell admitted firing. As to the second element, the Supreme Court has held "(a)lthough intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." State v. Noble, supra, at 736 (La.1983). Thus, specific intent can be inferred when a wound is inflicted at close range, State v. Boyer, 406 So.2d 143 (La.1981), or when a weapon is pointed directly at the victim. State v. Procell, 365 So.2d 484 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). In the case at bar, viewing the facts in the light most favorable to the prosecution, Bell confessed that he shot Gail Chandler on the front porch of the house. He had just crawled from underneath the porch, and thus was within close range of his victim. Furthermore, Bell had once before gone to the Chandler home to confront Gail with a gun. He admitted that he lay in wait for her underneath the porch and that he had once before threatened to kill Gail. From these facts, the trial judge could have inferred that Bell had the specific intent to kill Gail Chandler.
To support a conviction pursuant to LSA-R.S. 14:27(A), the State must prove that (1) a person having specific intent to commit a crime (2) did an act for the purpose of and tending directly toward the accomplishing of his object. It is immaterial whether he would have actually accomplished *282 the purpose. In this case, Mary Chandler testified that Bell pointed a gun at her, followed her through the house, prevented her from calling the police, and shot through a door when she closed it to prevent his further approach. Although Bell made a vague reference in his confession to a struggle between himself and Mary Chandler's father, no witness took the stand to confirm or explain that reference. Thus, the trial judge could have found that Bell had the specific intent to commit the crime of second degree murder in that he intended to kill or inflict great bodily injury upon Mary Chandler. Furthermore, Bell fired the gun, thereby committing an act for the purpose of and tending directly toward the accomplishing of second degree murder.
Accordingly, the evidence is sufficient when viewed in the light most favorable to the prosecution to support convictions under LSA-R.S. 14:30.1 and LSA-R.S. 14:27 (30.1). For the reasons assigned, the convictions and sentences of Benjamin Bell are affirmed.
AFFIRMED.