492 So.2d 180 (1986)
STATE of Louisiana
v.
Ronald J. MIRE.
No. CR85-1055.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
Rehearing Denied August 8, 1986.
Writ Denied November 7, 1986.
*181 Gerald J. Block, Lafayette, for defendant-appellant.
Charles Brandt, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX and YELVERTON, JJ., and JACKSON, Judge Pro Tem[*].
DOMENGEAUX, Judge.
The defendant, Ronald Mire, was charged by bill of indictment on July 7, 1983, with the second degree murder of his mother. Having plead not guilty and not guilty by reason of insanity and after having been found by the trial judge competent to stand trial, the defendant was tried and convicted of second degree murder on *182 July 12, 1985. Ronald Mire was sentenced to life imprisonment and now perfects this appeal alleging five assignments of error.

FACTS
On June 2, 1983, the defendant, Ronald Mire, shot his mother in the head with a 12-gauge shotgun. At the time, the victim was babysitting her four minor grandchildren ranging in ages from two to four. After shooting his mother, the defendant apparently took her keys and entered the trunk of her car to remove a social security check made payable to his mother but for his benefit. The defendant next took the car and drove to some six stores in an effort to cash the check but had no success. He then returned to the house where police had already arrived, and admitted shooting his mother and told police he flushed the shotgun shell down the toilet.
Approximately six and a half years before this incident occurred, Ronald Mire was involved in an automobile accident in which he sustained a head injury. As a result of the head injury, the defendant lapsed into a coma lasting approximately two weeks. The injury was diagnosed as a subdural hematoma which is a swelling of blood between the brain and the skull. Surgery was performed to relieve the pressure caused by the hematoma. After being discharged from the hospital, the defendant underwent several psychiatric and/or neurological evaluations and hospitalizations, and, according to expert testimony, continues to suffer from what is known as frontal lobe syndrome.

ASSIGNMENT OF ERROR NO. 1
The defendant assigns as error the trial court's ruling with respect to the admissibility of a videotaped statement made by the defendant after his arrest on the day of the shooting. The defendant contends that because of the mental condition sustained as a result of the prior automobile accident, the statement or confession was not voluntary. Specifically, he alleges the statements were not voluntary because among other behavioral problems he was overly susceptible to suggestion. A hearing was held out of the presence of the jury wherein the trial judge determined the videotaped statement was voluntary over the defendant's objection.
At the hearing, the testimony of the arresting officers sufficiently establishes that no coercion or suggestion was exerted by the police. The defendant was also adequately advised of his Miranda rights and informed the police that he understood them. The defendant offered into evidence the entire medical records of the defendant concerning examinations and treatment at the Acadiana Mental Health Center.
While a claim of mental illness normally requires a defendant to establish by a preponderance of the evidence that he has a mental illness, where the voluntariness of his confession is at issue, the state, having the burden of establishing that the confession was voluntary, still retains that burden. State v. Glover, 343 So.2d 118 (La. 1976).
However, the law is clear that when the issue on appeal is whether an accused's level of intellectual capacity precludes him from effectively understanding the essential nature of his rights to remain silent, to have assistance of counsel and of the consequences of his speech, much weight is accorded to the trial court's assessment. State v. Coleman, 395 So.2d 704 (La.1981), State v. Lefevre, 419 So.2d 862 (La.1982). Once the trial judge has determined that the state has met its burden of proof, his decision is entitled to great weight. State v. Lefevre, supra.
The trial court after hearing the testimony of the arresting officers and after reviewing the defendant's medical records, stated:
"I have studied the medical records, and there is no question that he had behavioral problems, chronic brain damage resulting in some disability to the left side, because it's right brain damage. His IQ is 88 or 90. There are two tests reported, one 88 and one 90. So that he is operating at low normal. Low normal. *183 So that would not veciate (sic) a consent. Even those people with, or who are mentally retarded who are not considered normal, who are considered below low normal, can give a valid consent. The Court rules that the permission was given voluntarily."
The evidence presented by the police officers supports this ruling and establishes that the statement was voluntary and the trial court had not committed manifest error in its determination.

ASSIGNMENT OF ERROR NO. 2
The defendant also argues that it was clearly erroneous for the jury to not find that the defendant had carried his burden of proving that he was legally insane at the time of the commission of the offense.
La.R.S. 15:432 provides a legal presumption that a defendant is sane and is responsible for his actions. La.C.Cr.P. art 652 further codifies that the defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. In order to carry this burden, the defendant must prove that because of a mental disease or defect he is incapable of distinguishing between right and wrong with reference to the conduct in question. La.R.S. 14:14.
The applicable standard of review when such a defendant pleads insanity and claims that there is insufficient evidence to find him guilty beyond a reasonable doubt is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense, State v. Roy, 395 So.2d 664 (La.1981). Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[1] Furthermore, this determination is made after reviewing all the evidence contained within the record, including expert and lay testimony. State v. Claibon, 395 So.2d 770 (La.1981).
In support of his insanity defense, the defendant offered the testimony of two experts; one in neurology and one in psychiatry. Both were accepted by the trial court as experts in their respective fields of medicine.
Dr. Donald Harper, a neurologist, testified that he had first seen Ronald Mire in June, 1985, and was retained in connection with this case. Doctor Harper's neurological evaluation was that Ronald, as a result of the previously sustained head trauma, was exhibiting numerous behavioral disabilities including a temper, slower memory, immaturity, restlessness and impulsiveness, all of which are characteristic of frontal lobe injury. His IQ appeared to be normal. He did not appear to have been hallucinating or have delusional thoughts. He was, however, showing anger and hostility towards his parents. When asked specifically on direct examination whether the defendant could distinguish right from wrong at the time he shot his mother, Doctor Harper stated that while he felt the defendant might have been able to know the Commandment "thou shalt not kill" if you asked him, the defendant could not have made the decision not to do something because something bad is going to happen. On cross examination, Doctor Harper stated that he felt the defendant did know his act was wrong, but because of Ronald's condition, Doctor Harper stated he did not know if that was of any concern to the defendant at the time of the act.
Dr. David Regan, a psychiatrist who also testified for the defendant, stated Ronald's diagnosis as organic personality syndrome. Doctor Regan first examined Mr. Mire on February 28, 1984, after having been appointed to a sanity commission to determine *184 whether the defendant had the mental capacity to proceed. After further examination, Doctor Regan reached the conclusion that because of Mire's mental disorder, he was unable to distinguish between right and wrong as to his conduct at the time of the shooting. Doctor Regan bases this conclusion in a great part on his belief that Mr. Mire lacked an ability to plan ahead and would act without any knowledge of the consequences.
It should be pointed out that the jury was also presented evidence of the defendant's own statements on videotape and through police investigation which shows that the defendant took the gun off the gunrack while she was outside, waited until she returned, shot her at close range, flushed the shell down the toilet, removed the keys from her pocket, took the social security check, took the car and attempted to cash the check. From this, the jury could reasonably conclude that the defendant did have the ability to plan and reason out his acts. This fact coupled with expert testimony that Ronald was capable of knowing that his actions were wrong, was sufficient evidence to prove beyond a reasonable doubt that the defendant did not prove by a preponderance of the evidence that he was unable to distinguish right from wrong at the time of the offense due to a mental defect.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment of error, the defendant objects to the charge given the jury by the trial judge. Specifically, the defendant had requested the trial judge to delete the phrase, "preponderance of proof is recognizing as proof of a character to satisfy the mind though it be not free from reasonable doubt," as it tends to confuse the jury making them consider the State's burden and the defense burden from the same basis, namely reasonable doubt.[2]
This assignment lacks merit as the phrase clearly sets out that a preponderance of evidence is not reasonable doubt but rather less than reasonable doubt. Furthermore, in his charge to the jury, the judge informed the jury that the defendant's proof by a preponderance is establishing "that it is more probable than not" that the defendant was insane at the time of the commission of the crime. Later in the charge, the judge again informed the jury that the state bears the burden of proving guilt beyond a reasonable doubt clearly demonstrating the standards are not the same and that a preponderance is a lesser burden.
Furthermore, the instruction was based on a standard announced in State v. Scott, 49 La.Ann. 253, 21 So. 271 (La.1897). Scott held that a defendant need prove only by a preponderance of the evidence that he was insane at the time of the offense and that "the preponderance of proof is recognized as proof of a character to satisfy the mind though it be not free from reasonable doubt".
The assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, the defendant argues the trial court failed to either admonish the jury or grant a mistrial when the State in its rebuttal closing argument referred to the defendant's having persuaded the postman in the past into *185 giving him the Social Security check instead of delivering it to his mother.
The defendant claims that such was reversible error as the prosecution in violation of La.C.Cr.P. art. 770 referred to another crime alleged to be committed by the defendant as to which evidence has not been admitted. During the trial the only mention of the alleged incident was during cross-examination of Doctor Regan.
"Q. Yes, sir. Doctor, do you know whether at other times he had tried to get that check at the first of the month by any other means?
A. Pardon?
Q. Do you know whether he had tried at the first of any other month to obtain possession of his S.S.I. check himself?
A. I believe IWell,
Q. Let me give a specific and ask you if you are familiar with it. Do you know whether on prior months, a month or two before this, he had gone and met the postman and asked the postman to deliver the check directly to him saying that his mother had sent him to do that? Did any of the family members tell you that that had happened during your interviews with them?
At the time these questions were asked no objection was lodged by the defendant. Furthermore, no objection was made by the defendant at the time the district attorney referred to the incident in his closing argument. It was not until after the closing remark, and after the jury instructions had been given and the jury had been removed to deliberate that the defendant first objected to the remark.
The trial judge correctly ruled the objection comes too late. La.C.Cr.P. art 841 requires that an objection be made contemporaneous with any error or irregularity in order to be availed of after the verdict.
This rule is applicable during closing argument as well. State v. Leierer, 242 La. 967, 140 So.2d 375 (1962). However, objections which come shortly thereafter will be considered timely, State v. Lee, 346 So.2d 682 (La.1977). In State v. Lee, supra, 685, the Court relied in particular on the following law review comment in finding such exception to the contemporaneous objection rule.
"`... [O]ne must recognize that the closing argument of the prosecutor may be so permeated with improprieties that constant objections may alienate the jurors or underscore the remark rather than erase it from their minds. Therefore, an objection at the end of the summation should be considered timely and in some cases should be allowed outside the presence of the jury.' [citations omitted] 34 L.L.Rev. 746, 759 (1974)."
The exception does not apply in this case for two reasons. First, the closing argument was not so permeated with improprieties as to make a contemporaneous objection inappropriate, and second, in the instant case, the defendant's objection came not at the end of the summation but rather after the jury instructions were given and the jury had begun deliberations.
The assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
In this final assignment of error, the defendant requests that this Court inspect the pleadings and proceedings for errors patent. Pursuant to La.C.Cr.P. art. 920, such errors patent are automatically considered on appeal. Having inspected the pleadings and proceedings, this Court finds no errors patent.
For the reasons assigned, the defendant's conviction and sentence is affirmed.
AFFIRMED.
JACKSON, J. Pro Tem., dissents and assigns reasons.
ROBERT P. JACKSON, Judge Pro Tem., dissenting.
I respectfully dissent from the decision of the Court on Assignment of Error #2 for these reasons.
*186 On January 1, 1976 defendant Ronald Mire was involved in an automobile collision in which he struck his head. Initially feeling well, he offered to drive home, but he later collapsed and lapsed into a coma. He suffered from a subdural hemotoma. This hemotoma applied pressure to the brain causing a mental condition known as frontal lobe syndrome. This syndrome is manifested by such symptoms as a severe decrease in emotional maturity and an increase in impulsiveness. His family sought extensive care and treatment for Mire over a seven year period. Ronald Mire was a former high school varsity athlete.
As defendant/appellants' behavior deteriorated, relations between his parents and him became strained. His impulsiveness and emotional immaturity prevented him from keeping a job. He would stay out late at night and end up sleeping on doorsteps. He and his mother argued over the use of his social security checks. On one occasion Mire attempted to persuade the postman to deliver the checks, addressed to his mother for Ronald Mire, to him personally and not to his mother, Doris Mire. But, these disputes never ended in violence.
On June 2, 1983 defendant shot his mother in the head with a twelve gauge shotgun. Witnesses present included four children aged two through four years, some of them relations. Doris Mire was obviously dead; nevertheless, Ronald Mire asked her if she was alright. He took her keys from her pocket and opened the trunk of her car to get his most recent social security check. After unsuccessfully trying to cash the check, he returned home to find the police present. Upon his return, he "was more or less wondering what was going on," according to Detective Michael Savoie. He was then arrested and advised of his rights.
He made a confession which was shown on videotape at the trial. In it, he confessed to having shot her, taking the check and attempting to cash it. He also claimed that he took the gun from its gun rack while his mother stepped outside and that he later flushed the expended shell down the toilet, although this narration of events conflicts with what he later told examining physicians. Dr. Donald Harper testified that Ronald Mire told him that he had felt peculiar that morning. He entered his parents' bedroom and noticed his father's shotgun. He thought this odd since his father, Mr. Curley Mire, always kept his firearms safely secured. He picked it up and sat down looking out the window. He looked toward the field for birds and considered going hunting. He heard a noise as someone walked through the house. Thinking he was being attacked, he fired out of reflex at this still unknown person. He realized then that the person was his mother, became confused and left the house. This was related to Harper two years after the shooting.
The defendant bears the burden at trial of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. LSAC.Cr.P. Art. 652; State v. Claibon, 395 So.2d 770 (La.1981). To carry this burden, the defendant must prove that because of a mental disease or defect he was incapable of distinguishing between right and wrong with reference to the conduct in question. LSAR.S. 14:14; State v. Roy, 395 So.2d 664 (La.1981).
In support of his insanity defense, the defendant offered the testimony of two experts, one in neurology and one in psychiatry. Both were accepted by the trial court as experts in their respective fields of medicine.
Dr. Donald Harper, a neurologist, testified first for the defense. He interviewed Ronald Mire in June, 1985 in connection with this case, performed a detailed neurological evaluation, and examined the confession as well as the numerous medical records already existing. Dr. Harper arrived at a diagnosis of status post frontal lobe contusion, which was caused by the injury to his forehead in 1976. Symptoms include behavioral disabilities including a temper, slower memory, immaturity, restlessness and impulsiveness, all of which appeared in Ronald Mire. A frontal lobe injury is unique in that only emotional aspects *187 of the victim's life is altered. His IQ may, as has occurred with the defendant, remain normal.
On direct examination Dr. Harper testified that the defendant could not distinguish right from wrong. He compared his conduct in shooting his mother to a four-year old who has a temper tantrum. Neither the defendant then nor a four-year old child appreciate the consequences of his actions. Dr. Harper further testified that the defendant might have been aware that society forbids killing, but that societal strictures meant little to someone in Mire's condition. They simply do not independently occur to him. As with a victim of a frontal lobotomy, someone afflicted with frontal lobe syndrome lacks the imaginative foresight to determine that consequences or outcomes of his actions, which consequences or outcomes he understands to exist, will actually follow. He lacks the ability to see, without some outside prompting, the result of his actions. Thus, he is unable to distinguish right from wrong.
Dr. David B. Regan, a psychiatrist, also testified. He first examined the defendant in February, 1984 to determine Ronald Mire's competence. After further examination of prior medical records, examination of his confession and hour long interviews with family members, he also determined that Ronald Mire was unable to distinguish right from wrong. Like Dr. Harper, he diagnosed the problem as frontal lobe syndrome, which he more specifically labeled as organic personality syndrome. He found additional symptoms present in Ronald Mire. Where Ronald Mire was considered a hard worker before the accident, he now became lazy. He became restless, hyperactive and much more ingratiating and gregarious. His bladder control and sexual behavior deteriorated. He would masturbate for great lengths of time sometimes in public. His attention span became virtually nonexistent. Use of the extremities on his left side became impaired. He still walks with a noticeable limp.
He denied that defendant's actions leading up to and following the shooting indicated that defendant knew what he had done was wrong. He asserts that Mire did not plan the series of actions because someone with a frontal lobe injury could not do so and because Mire's behavior prior to the shooting does not reveal any such intelligently planned activities. Ronald Mire, he asserts, performed these acts as they occurred to him.
The State presented no expert rebuttal testimony and no evidence regarding sanity. They rely on impeachment of defendant's experts and the actions of the defendant as he describes them in his videotaped confession. The State argues that the act of flushing the expended shotgun shell down the toilet indicates that defendant knew that what he did was wrong.
The applicable standard of review, when a defendant pleads insanity and claims that there is insufficient evidence to find him guilty beyond a reasonable doubt, is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. State v. Roy, 395 So.2d 664 (La.1981); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This determination is made after reviewing all the evidence contained within the record, including expert and lay testimony. State v. Claibon, Supra.
Dr. Regan's interpretation of the sequence of events surrounding the shooting is not unreasonable. Dr. Harper did concede on cross-examination that the defendant may have been aware that killing was wrong, but stated that unless an outside force interceded to remind him of this moral value, he would not connect that belief to the act of shooting his mother. Just as a child knows a particular act is wrong yet does it, not thinking of the consequences, so did Ronald Mire. Dr. Harper may have answered the question somewhat philosophically but his ultimate answer was that Mire could not distinguish right from wrong. They both state that this inability to distinguish right from wrong began after the accident.
*188 This case is similar to Roy. In Roy three medical experts testified as to the insanity of the defendant. The defendant, one expert testified, may have known his actions were against the law but the law was not "even a part of his thinking at the time...." In Roy, the defendant fled from the scene of the killing and submitted to his arrest, subsequent actions which the State argued meant the defendant knew that what he was doing was wrong. The Supreme Court rejected this contention: "Such actions are not inconsistent with a state of insanity, and could not by any rational fact finder be said to overcome the overwhelming evidence of insanity." Roy, at 669. Flushing an expended shotgun shell down the toilet is no more indicative of sanity, in view of the expert testimony to the contrary, than fleeing from the scene of the crime or submitting to arrest.
The evidence here being equally overwhelming, no rational trier of fact could find that the defendant did not prove his insanity at the time of the offense by a preponderance of the evidence. Accordingly, the sentence and conviction should be set aside and the case remanded to the lower court with instructions to enter a judgment of not guilty by reason of insanity and to comply with LSA-C.Cr.P. Art. 654. See State v. Byrd, 385 So.2d 248 (La.1980).
I Dissent.
NOTES
[*] Judge Robert P. Jackson of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See my concurring and dissenting opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 128 (La.1984).
[2] That part of the trial court's instruction to the jury with respect to the burden of proof of insanity is as follows:

"The defendant has the burden of proving his insanity at the time of the commission of the offense by a preponderance of the evidence. Thus, the defendant must establish that it is more probable than not or by preponderance of proof, that he was insane at the time of the commission of the crime. Preponderance of proof is recognized as that proof of a character to satisfy the mind, though it be not free from reasonable doubt.
Insanity at the time of the commission of the crime exempts the offender from criminal responsibility. If the circumstances indicate that because of a mental disease or mental defect the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant must be found not guilty by reason of insanity."