LeBLANC, Judge.
Lloyd Johnson, Jr., defendant, was charged by bill of information with attempted first degree murder, in violation of La.R.S. 14:27 and 14:30 A(5)[1]. He pled not guilty and not guilty by reason of insanity. The trial court appointed a sanity commission and, after a hearing, found defendant competent to stand trial. After a jury trial, he was found guilty as charged. He was sentenced to imprisonment for 50 years at hard labor and now appeals, urging five assignments of error.
FACTS:
On January 16, 1990, Johnson attempted to strangle two-year old Brandon Lyon with a belt. The following facts were revealed during trial. Between 8:00 and 9:00 in the morning, Deborah Mosely, a neighbor, heard Brandon “hollering,” his voice getting weaker and weaker. Mosely went towards the sounds and saw Johnson pulling on a belt that was around Brandon’s neck. Brandon was lying flat on his stomach, and Johnson had his foot on Brandon’s back and was pulling back with the belt. Then Johnson swung Brandon around in the air and deposited him in a garbage can. Mosely flagged down another neighbor, Daniel Turner, who was just arriving home, and told him there was a dead baby in the garbage can. Turner brought the child to the emergency room, where he was treated *830 for oxygen deprivation. After the police were called, Johnson was arrested.
ASSIGNMENT OF ERROR NUMBER ONE:
In this assignment of error, Johnson contends the trial court erred in not allowing him to introduce into evidence the discharge summary of Dr. Bacuta, the emergency room physician who treated the victim. Specifically, Johnson alleges that his insanity defense was hindered when Dr. Bacuta’s discharge summary, which was proffered, was not presented to the jury.
Dr. Luisa C. Bacuta is a pediatrician who treated the victim when he was brought to the emergency room at South Louisiana Medical Center. Dr. Bacuta testified at trial that the child’s mother, Mrs. Lyons, gave her the victim’s history, including the attack at issue in this case. Dr. Bacuta testified that she personally did not observe what had happened to the victim or who had strangled him. The discharge summary prepared by Dr. Bacuta reads in pertinent part as follows:
This is a thirty-three month-old black male who was apparently healthy until this morning when he was being prepared by his Mom to go to the babysitter and he went to greet his grandmother but was strangulated with a belt by a mentally ill male neighbor who dumped him in a garbage can. The neighbor has been mentally ill for years and was recently admitted in the Psychiatric Unit.
Johnson alleges that La.R.S. 13:3714 permits the admissibility of charts or hospital records. La.R.S. 13:3714 provides:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.
We note that the discharge summary proffered is not a certified copy and is not signed by the administrator or the medical records librarian of the hospital. Therefore, the discharge summary does not meet the requirements of La.R.S. 13:3714. Johnson further argues that the proffer should have been admissible under La.C.E. art. 804 B(5), an exception to the hearsay rule, which provides:
Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
jjc ‡ * $ ' *
(5) Records of regularly conducted business activity. In a criminal case, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, if the source of information, method, and circumstances of preparation indicate a clear and convincing degree of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term “business” as used in this Subparagraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Art. 803(8)(b) shall not qualify as an exception to the hearsay rule under this Subparagraph.
In order for hearsay evidence to be admissible under La.C.E. art. 804 B(5), the declarant must be unavailable. According to La.C.E. art. 801 B, a declarant is a *831 person who makes a statement. Dr. Bacu-ta testified she did not personally observe Johnson and that the information about his mental illness was given to her by Mrs. Lyons. Dr. Bacuta prepared the discharge summary with information given her by Mrs. Lyons. Viewing either Dr. Bacuta or Mrs. Lyons as the ultimate declarant, we reject Johnson’s arguments. Both persons were available for testimony, and, in fact, did testify at trial. Thus, the discharge summary does not satisfy the requirements of the hearsay exceptions. We find the trial court did not err in excluding it.
Moreover, we do not find that Johnson’s insanity defense was hindered by the exclusion of the discharge summary. Two members of the sanity commission testified in person during the trial and the third member’s testimony was stipulated and presented to the jury in letter form. The sanity commission members thought Johnson was competent to stand trial; however, there was testimony that he heard voices, had visual hallucinations and suffered delusions. The psychiatrist who treated Johnson during his recent stay at the mental hospital testified that he had a history of chronic paranoid schizophrenia. Exclusion of the discharge summary thus did not preclude Johnson from presenting evidence favorable to his sanity defense.
For the reasons herein stated, we find this assignment of error meritless.
ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE:
In these assignments of error, Johnson contends the jury verdict was contrary to the law and the evidence and the trial court erred in denying his motion for post verdict judgment of acquittal. Specifically, he argues that because he was insane at the time of the incident, he lacked the specific criminal intent for first degree murder.
Sanity, including capacity to proceed, is presumed. La.R.S. 15:432; State v. Claibon, 395 So.2d 770, 772 (La.1981). The question of whether or not defendant has affirmatively proved his insanity and should not be held responsible for his actions is one for the jury. State v. Pravata, 522 So.2d 606, 614 (La.App. 1st Cir.), writ denied, 531 So.2d 261 (1988). All of the evidence, including both expert and lay testimony, and the actions of the defendant, should be considered by the jury in determining sanity. State v. Pravata, 522 So.2d at 614. When a defendant who affirmatively offers the defense of insanity claims that the evidence does not support a finding of guilty beyond a reasonable doubt, the standard for review by an appellate court is whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. State v. Claibon, 395 So.2d at 772; State v. Pravata, 522 So.2d at 614.
Dr. Charles Spence, a general practitioner who served on the sanity commission, testified at trial that Johnson was competent to stand trial, so long as he continued taking his medicine. Dr. Spence stated that whether or not Johnson knew right from wrong at the time of the offense was not within his field of expertise. Dr. Tommy Haydel, a family practitioner who served on the sanity commission, testified at trial that, when he examined Johnson, he found him incompetent to stand trial. Dr. Haydel also stated that whether or not Johnson knew right from wrong at the time of the offense was outside his field of expertise. The third member of the sanity commission, Dr. Charles LeDeaux, a general surgeon, was unavailable to testify at trial; his findings that defendant was not competent to stand trial were read to the jury.
The most extensive testimony about Johnson’s mental condition came from Dr. Pedro Crespo, a psychiatrist at the South Louisiana Medical Center, who was Johnson’s physician during his stay there. Dr. Crespo testified that Johnson’s medical records and history demonstrate that defendant smoked marijuana and used “black mollies,” a street narcotic. Dr. Crespo also testified that when Johnson was admitted to the unit on January 5, 1990, the staff thought drugs might be the cause of his bizarre behavior. Because Johnson was *832 admitted on a weekend, he was not tested for drugs until Monday; that test came back negative. Dr. Crespo stated that “it [the test] came back negative in spite that we suspected it [drug abuse].” Dr. Crespo testified he had not examined Johnson since his release in January of 1990; the doctor was not prepared to state whether the attempted strangling incident was caused by Johnson’s paranoid schizophrenia or a biochemical reaction to drugs.
Bernard Williams, a neighbor, was waiting outside his home for a ride to work on the morning of the incident. Williams testified he saw Johnson walking, falling to his feet and pointing at the sky, although there was nothing in the sky. Daniel Turner, the neighbor who took the victim to the hospital, testified that on the morning of the incident, he saw Johnson looking up in the air, “and pulling, reaching in the air like he was pulling something out of the sky.” Turner testified there was nothing in the sky to attract attention.
Although Johnson exhibited strange behavior and appeared to be unbalanced, those actions are not a basis for finding insanity. The jury heard testimony from neighbors who observed Johnson and from physicians and a psychiatrist who examined him. We conclude sufficient evidence was presented upon which reasonable jurors could conclude Johnson failed to prove by a preponderance of the evidence that he was insane at the time of the offense. Therefore, for the reasons herein stated, we find these assignments of error meritless.
ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, Johnson contends that the trial court erred in denying his motion for a new trial based on the aforementioned errors. Having found no merit to those assignments of error, we likewise find no merit to this cumulation of errors argument.
ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, Johnson contends that his sentence constitutes cruel and unusual punishment. Specifically, he argues that the trial court should have taken into account his mental illness and should have reduced his sentence.
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has wide discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990). The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Johnson was sentenced to fifty years at hard labor, the maximum sentence for attempted first degree murder. La. R.S. 14:30 C and 14:27 D(l). At the sentencing hearing, the trial court stated that Johnson committed a heinous crime against a defenseless infant. The court opined that there was undue risk that Johnson would commit another crime during the period of a suspended sentence or probation and that he is in need of correctional treatment and a custodial environment that can be provided most effectively by his commitment to an institution. It was the court’s opinion that a lesser sentence would deprecate the seriousness of the crime, which was serious and life threatening. The court noted that Johnson acted without reasonable provocation and that there were no grounds tendered to excuse or justify his criminal conduct.
We find the court did not abuse its discretion in imposing sentence. The sentence *833 is not disproportionate to the offense committed, nor does it shock our sense of justice. We thus find this assignment of error meritless.
PATENT ERROR:
After reviewing this record, we have discovered a sentencing error patent on the face of the record. The trial judge did not give Johnson credit for time served when the sentence was imposed.
La.C.Cr.P. art. 880 requires the court to give defendant “credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.” Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we amend the sentence to reflect that Johnson is to be given credit for time served prior to execution of his sentence. See La.C.Cr.P. art. 882 A. Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH ORDER.

. In the same bill of information, Johnson also was charged with simple kidnapping in violation of La.R.S. 14:45. However, he was tried only on count one: attempted first degree murder. In the bill of information, the state improperly joined count two with the other count. Simple kidnapping is triable by a jury of only six and, thus, cannot be joined with a charge which is triable by a jury of twelve. See La. C.Cr.P. arts. 493 & 782. However, such error is not reversible as the state proceeded to trial on count one only.