510 So.2d 751 (1987)
ZONING BOARD OF CITY OF HAMMOND and City of Hammond
v.
TANGIPAHOA ASSOCIATION FOR RETARDED CITIZENS and the Retarded Citizens Development Foundation, Inc.
No. CA 86 0610.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
Rehearing Denied August 31, 1987.
*752 John I. Feduccia, Hammond, La., for plaintiffs-appellees.
Michael R. Tregle, Hammond, La., for defendants-appellants.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal seeking the dissolution of an injunctive order granted by the trial court preventing defendants-appellants from operating a community home for six mentally handicapped adults. The City of Hammond (Hammond), through its Zoning Board of Adjustment, filed suit to prohibit the defendants-appellants, Tangipahoa Association for Retarded Citizens (T.A.R.C.) and the Retarded Citizens Development Foundation, Inc., from establishing a group home within an area zoned as a single family residential district. From the granting of the injunction, T.A.R.C. appeals.

FACTS
In April, 1985, the Retarded Citizens Development Foundation, Inc., purchased a certain lot in Hammond, Louisiana, that was zoned as R-11 Residential District. An R-11 district is defined by the ordinances of the city as "a single family dwelling residential district allowing for large lots and including non-commercial uses generally associated with family residential areas...." (Emphasis in the ordinance).
In May, 1985, T.A.R.C. leased the property, with its improvements, from the Development Foundation to house six mentally handicapped adults, as provided for in La. R.S. 28:381(8).[1] The statute defines such homes as those that provide "for six or fewer mentally retarded or developmentally disabled individuals ..." and declares that they are "considered single family units having common interests, goals, and problems."
Although T.A.R.C. applied for a certificate of occupancy from the local authorities, it was never issued. Hammond maintained that additional information was needed as to T.A.R.C.'s qualifications to operate such a group dwelling in the city's residential district. However, on May 21, T.A.R.C. placed five of the intended residents into the dwelling prior to official authorization from the city. Two days later, May 23, Hammond filed this lawsuit to prohibit T.A.R.C.'s further contravention of the city's zoning ordinances.
The lawsuit had been submitted to the court on stipulation of counsel. The written reasons for judgment stated that although La.R.S. 28:478 A[2] declares a right of community homes to be placed in zones for multiple-family dwellings, the Hammond R-11 classification is zoned for single family dwellings, and, thus, the statute's mandate is not applicable to T.A.R.C.'s community home.
The trial court also determined that the zoning ordinance was not a violation of the United States Constitution's guarantee of *753 equal protection for all its citizens. The trial court found that the zoning provision did not create a suspect classification, mentally handicapped individuals. As stated in the written reasons, "it would be just as impermissible for a group of unrelated college students to share the residence" in the R-11 zone as it was for the mentally handicapped adults. The trial court further noted that Hammond has a "legitimate interest in limiting certain areas of town to single family residences," citing Schweiker v. Wilson, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). Thus, the city's ordinance did not deny the defendants equal protection of the law.

ASSIGNMENT OF ERRORS
Defendants-appellants appeal the grant of injunctive relief against them and assign five alleged errors of the trial court, as follows:
1. The trial court erred in granting the permanent injunction to plaintiffs.
2. The trial court erred in its Reasons for Judgment in finding La.R.S. 28:478(a) [sic] is not unconstitutional.
3. The trial court erred in not finding that the Zoning Ordinance of the city of Hammond is facially unconstitutional.
4. The trial court erred in not finding that the Zoning Ordinance is unconstitutional as applied.
5. The trial court erred in not ordering the City of Hammond to grant defendants a Certificate of Occupancy.

ASSIGNMENT OF ERROR NO. 1
Defendants contend that the permanent injunction should not have been issued because the defendants' use of the dwelling is not prohibited by the local zoning ordinance. T.A.R.C. argues that the Hammond ordinance is either ambiguous or does not explicitly restrict the use of the dwelling in question by more than one family or by persons unrelated by blood.
The R-11 district is the most restrictive of the residential districts in the scheme of the Hammond ordinance and is defined as "a single family dwelling residential district allowing for large lots and including noncommercial uses generally associated with family residential areas." "Family" is defined in the definitional section of the zoning ordinance as "[o]ne or more persons occupying a living unit as an individual housekeeping organization as distinguished from a group occupying a boarding house, lodging house, or hotel." A "lodging house," in contrast, is defined as "[a] dwelling consisting of not more than one living unit occupied by not more than twenty persons not related by, blood, marriage, or adoption. This term includes rooming house, tourist home, and nursing home." (Emphasis by the court).
An extrapolation of these definitions indicates that a necessity to a R-11 residence is a family unit, or, at least, a living unit whose members are related by blood, marriage, or adoption.
T.A.R.C. contends that the single family dwelling need only consist of a building that contains only one living unit. T.A.R.C. misunderstands the focal point of the definition of "family residence." The essential ingredient of a single family residence is not that it consists of only one living unit, but rather that it houses a number of persons related by blood, marriage, or adoption. T.A.R.C.'s contention of ambiguity is without merit.
T.A.R.C. also argues that City of Kenner v. Normal Life of Louisiana, Inc., 483 So.2d 903 (La.1986), rendered ten days after this suit's judgment, supports its contention that injunctive relief should be denied. In Kenner, the city petitioned for permanent injunction prohibiting a local sponsor from operating community homes for the mentally handicapped in the city's single family dwelling residential zone.
Defendants-appellants contend that Hammond's R-11 designation should be similar to that of the Kenner ordinance. The Kenner ordinance defined a single family dwelling as "a building designed for or occupied exclusively by not more than one family." The Hammond zoning definition is "a building that contains only one living unit." T.A.R.C. alleges that Hammond *754 seeks the same result as the Kenner definition. To accomplish this result would require an amendment to the definitions in the zoning ordinance.
Kenner is controlling, however, in that the use of the T.A.R.C. dwelling must meet the requirements of the local ordinance. No matter the statutory definition of community homes, the T.A.R.C. residence is not a single family dwelling. La. R.S. 28:381(8) and its accompanying terms and provisions do not expressly override the local municipalities' ordinances on zoning. As stated in Kenner, "[t]he Legislature arguably expressed ... a public policy that community homes may be operated by right in multiple family residential districts, but that public policy cannot be extended to apply to single family residential districts in the absence of express legislation." 483 So.2d at 908.
Therefore, the grant of injunctive relief was correct.

ASSIGNMENT OF ERROR NO. 2
Defendants-appellants assert that La. R.S. 28:478 A is an unconstitutional denial of equal protection. The statute's subsection simply states that "it is necessary to establish the statewide policy that community homes are permitting [sic] by right in all residential districts zones for multiple-family dwellings." The constitutional infirmity of a statute which merely states the policy of an enactment escapes this court.
However, because T.A.R.C.'s appeal lacks any form of brief on this assigned error, the court finds this assignment of error abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

ASSIGNMENTS OF ERRORS NO. 3 AND 4
T.A.R.C.'s third and fourth alleged errors maintain that Hammond's zoning ordinance, specifically Sections 2.5 and 5.5, on its face and in its application is an unconstitutional denial of equal protection. La. Const. art. I, § 3. T.A.R.C. asserts that the unfettered discretion of the local governing authority to grant or deny zoning variances is unconstitutional. Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982).
This court pretermits any discussion of unconstitutionality. This court takes judicial notice of the fact, that under the ordinance's definition of a variance, the T.A.R.C. building in controversy could not obtain a non-conforming permit. A variance is defined as the means by which a property owner is relieved from zoning restrictions "because of particular physical surroundings, shape or condition of the property." It is granted to alleviate those hardships, not self-created, which are caused by the strict application of the zoning regulations.
The community home could not satisfy either of these criteria. The use of this structure in a single family residential district is a self-created hardship. There exists no evidence in the record that the dwelling involved may not exist as a single family residential structure due to "particular physical surroundings, shape or condition of the property." There is no indication in the record that a community home could not exist on the T.A.R.C. site because of a geographic condition or characteristic of the property. Any attempt to seek a variance would be rejected by the local zoning authority. Any discussion of the constitutionality of the contested ordinance would be inappropriate. Therefore, the third and fourth assigned errors are pretermitted.

ASSIGNMENT OF ERROR NO. 5
The final assigned error by defendants-appellants is the trial court's refusal to order Hammond to issue T.A.R.C. a certificate of occupancy. T.A.R.C. argues that under the scheme of zoning regulations and restrictions Hammond is estopped from denying T.A.R.C. the use of the dwelling once the city's building official issued a building permit.
Defendants-appellants rely on two basic grounds to support the estoppel assertion. T.A.R.C. contends that the logical sequence in which a dwelling complies with the ordinance restrictions precludes Hammond from denying T.A.R.C. certificate of occupancy. *755 Under the zoning ordinance's subsections 5.7 and 5.8, the building official must first certify compliance with the zoning ordinance prior to the issuance of a building permit. Then, the same building official must conduct a final inspection prior to the issuance of the certificate of occupancy.
However, T.A.R.C.'s reading of the subsection in question is incorrect. Subsection 5.8 requires the official to insure that all property owners seeking building permits "receive certification that their structure is in compliance" with the applicable zoning restrictions. (emphasis added). The asserted subsections do not require the building official to certify that the dwelling's use complies with the restrictions, prior to the building permit's issuance. It is a matter of structural compliance that is essential in the pre-building permit stage.[3] Later, the use of the dwelling becomes the focal point for the final inspection.
The second portion of T.A.R.C.'s estoppel argument is that T.A.R.C. reasonably relied upon the issuance of the building permit to further its development of the dwelling. Citing La.Civ.Code arts. 1849-53 and 1967, T.A.R.C. contends that it made certain presumptions and altered its position based on these presumptions when the building permit was issued.
This latter estoppel contention is as incorrect as the first. If the logic of T.A.R. C.'s arguments was to prevail, once a building permit is issued by Hammond, no further improper or illegal structure or use could be prevented if it contravened the existing zoning restrictions. Hammond's tiered process of compliance exists to prevent such an eventuality. The required stages insure that dwellings are constructed and used according to their designated zones. Otherwise, both Hammond and individual property owners would never be able to enforce the zoning ordinance. It is to the benefit of both owner and official that ready review is present to remedy any dilemma as quickly and inexpensively as possible.
Thus, we find that the trial court was correct in not ordering Hammond to issue a certificate of occupancy.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at defendants-appellants' cost.
AFFIRMED.
NOTES
[1] La.R.S. 28:381(8) provides that:

"Community home" means residential living options that are certified, licensed, or monitored by the department to provide residential services to fifteen or fewer mentally retarded or developmentally disabled individuals. Community homes that provides [sic] for six or fewer mentally retarded or developmentally disabled individuals, with no more than two live-in staff, shall be considered single family units having common interests, goals, and problems. A community home that provides residential living options for seven to fifteen mentally retarded or developmentally disabled individuals shall be referred to as a group home.
[2] La.R.S. 28:478 A states:

In order to achieve uniform statewide implementation of the policies of this Title and of those of the mental retardation law and of the mental health law, it is necessary to establish the statewide policy that community homes are permitting [sic] by right in all residential districts zones for multiple-family dwellings.
[3] T.A.R.C.'s stipulation that Hammond "did not ever issue a Certificate of Occupancy" from October 5, 1982, through December, 1984, is incorrect. The stipulation states that as a Hammond building inspector "he (Richard Seeward) did not ever issue a certificate of occupancy" from October 5, 1982 through December, 1984. There is no proof in the record that Seeward was the sole official authorized to issue such certificates.