543 So.2d 1013 (1989)
STATE of Louisiana
v.
Charlie BELL.
No. CR88-827.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*1014 J.P. Mauffray, Jr., Jena, for defendant-appellant.
Dan B. Cornett, Dist. Atty., Jena, for plaintiff-appellee.
Before GUIDRY, STOKER and KING, JJ.
GUIDRY, Judge.
Defendant-appellant, Charlie Bell, was indicted by a grand jury on July 17, 1987 for the second degree murder of his wife, Evelyn Bell, a violation of La.R.S. 14:30.1. Defendant entered a plea of not guilty and not guilty by reason of insanity. Thereafter, a sanity commission was appointed and at a sanity hearing held November 19, 1987, defendant was found competent to proceed. A supplemental sanity hearing held February 4, 1988, also found the defendant competent to proceed.
On May 11, 1988, at the conclusion of a three day trial before a twelve person jury, defendant, Charlie Bell, was found guilty as charged by a ten to two verdict. On May 23, 1988, the trial judge sentenced the defendant to life in prison without benefit of parole, probation or suspension of sentence.
Defendant appeals his conviction and sentence based on four assignments of error:
1. The trial court erred in failing to apply the correct standard for the burden of proof required for establishing the insanity defense.
2. The trial court erred in failing to apply the correct substantive law with respect to determining the defense of insanity.
3. The trial court erred in failing to charge the jury with the defendant's special request for a mistrial instruction.
4. The trial court erred in failing to grant defendant's motion for a new trial; motion in arrest of judgment; and, motion for a judgment of acquittal.

*1015 FACTS
At approximately 4:00 p.m. on July 4, 1987, defendant, Charlie Bell, shot his wife twice with a .25 caliber pistol. The victim was hit once in the head and once in the left side of her back. This occurred while only the victim and defendant were in the Bell's family home located in LaSalle Parish, Louisiana. According to a joint stipulation entered in the record at trial, the shooting was not accidental; not due to negligence; not done in self-defense; and, it resulted in the victim's death on July 14, 1987.
Immediately following the shooting, defendant left the scene and drove his truck to the nearby home of one of his daughters where his children were gathered for the 4th of July. Defendant walked into the house, informed the children that he had just killed their mother, threw the key to his safety deposit box on a table and left. The children drove to the family home and discovered their wounded mother on the floor.
Deputy Odell Calloway of the LaSalle Parish Sheriff's Department, responding to the incident, observed defendant walking in the driveway of the Bell home near the roadway. As the deputy drove his unit into the driveway, defendant stopped him and handed him the .25 caliber pistol. He informed the deputy that he shot his wife and was ready to go. Defendant opened the unit door and got in the car. Deputy Calloway transported the defendant to the LaSalle Parish Sheriff's Department and placed him under arrest for attempted murder. After being advised of his rights, defendant gave a lengthy voluntary recorded statement confessing to the shooting.
Meanwhile, other law enforcement officers and ambulance personnel had arrived at the scene to assist the victim. She was transported to LaSalle General Hospital in Jena, Louisiana, where she received emergency treatment before being flown by helicopter to St. Francis Cabrini Hospital in Alexandria, Louisiana, where she remained until her death on July 14, 1987.
Initially, defendant was charged with attempted second degree murder. However, when the victim died, the matter was presented to the LaSalle Parish Grand Jury which returned a true bill of indictment against defendant for second degree murder. Bell was arraigned on August 13, 1987, and entered a plea of not guilty and not guilty by reason of insanity. Both defendant and his attorney were present at arraignment.
The trial court appointed sanity commissions on August 13, 1987 and September 18, 1987. Additionally, on motion of defendant, the court ordered further examination of defendant by a psychiatrist of his choice, Dr. Joe Hayes, and a supplemental sanity hearing was held. All doctors examining defendant expressed the opinion that he was able to proceed to trial.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant contends that the trial court erred in failing to apply the correct standard for the burden of proof required for establishing the insanity defense.
The insanity defense is derived from La. R.S. 14:14 which provides:
"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."
The insanity defense is asserted subject to the provisions of La.R.S. 15:432 which, in pertinent part, reads:
"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption ... that the defendant is sane and responsible for his actions..."
Moreover, La.C.Cr.P. art. 652 provides:
"The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence."
Both the Louisiana Supreme Court and the United States Supreme Court have held *1016 that it is not unconstitutional to require the defendant to bear the burden of proof when the defense of insanity is pled. State v. Rives, 407 So.2d 1195 (La.1981); State v. Thompson, 429 So.2d 862 (La.1983); State v. Nelson, 459 So.2d 510 (La.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322, rehearing denied, 472 U.S. 1013, 105 S.Ct. 2715, 86 L.Ed.2d 729; Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).
A defendant may rebut the presumption that he is sane and responsible for his actions by showing, by a preponderance of the evidence, that he was suffering from a mental disease or defect at the time of the offense which rendered him incapable of distinguishing right from wrong. State v. David, 425 So.2d 1241 (La.1983); State v. Monk, 454 So.2d 421 (La.App. 3rd Cir.1984), writ denied, 459 So.2d 537 (La. 1984). When a defendant presents evidence in an effort to establish that he was insane at the time of the crime, the State is not required to offer any proof of defendant's sanity nor is it required to offer evidence to rebut defendant's evidence. Rather, the determination of whether a defendant's evidence successfully rebuts this presumption is made by the trier of fact viewing all of the evidence, including expert and lay testimony, the conduct of the defendant and his actions in committing the particular crime. State v. Daigle, 344 So.2d 1380 (La.1977); State v. Brown, 421 So.2d 854 (La.1982); State v. Heath, 447 So.2d 570 (La.App. 1st Cir.1984), writ denied, 448 So.2d 1302 (La.1984); State v. Bowman, 491 So.2d 1380 (La.App. 3rd Cir. 1986), writ denied, 498 So.2d 13 (La.1986).
In the instant case, the trial judge instructed the jury that defendant had the burden of proving his insanity at the time of the commission of the offense by a preponderance of the evidence. He gave a thorough and accurate account of the law applicable when an insanity defense is raised. Regarding this matter he stated:

"INSANITY
In this case the defendant has entered a plea of `not guilty and not guilty by reason of insanity'.
Because of such a plea, you must first determine whether the defendant committed the offense charged or an offense responsive thereto. Unless you find beyond a reasonable doubt that the defendant committed the offense charged or an offense responsive thereto, you must find the defendant not guilty.
If you find beyond a reasonable doubt that the defendant committed the offense charged or an offense responsive thereto, then you must determine whether he was insane at the time the offense was committed.
The defendant has the burden of proving his insanity at the time of the commission of the offense by a preponderance of the evidence. Thus, the defendant must establish that it is more probable than not that he was insane at the time of the commission of the crime.
Insanity at the time of the commission of a crime exempts the offender from criminal responsibility. If the circumstances indicate that because of a mental disease or mental defect the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant must be found not guilty by reason of insanity.
In determining the question of the sanity or insanity of the defendant at the time of the commission of an offense, you must consider all of the evidence bearing on the defendant's mental condition, including the testimony of experts and of other witnesses, and the conduct and actions of the defendant.
Thus, if you find:
1) that the state proved beyond a reasonable doubt that the defendant did commit the offense charged or a responsive offense; and
2) that the defendant established by a preponderance of evidence that he was unable to distinguish right from wrong with respect to the conduct in question at the time of the offense;
then your verdict must be `not guilty by reason of insanity'."
*1017 There is nothing in the record to indicate that the jury applied some other standard besides the one that they were correctly charged to apply. There is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error defendant contends that the trial court erred in failing to apply the correct substantive law with respect to determining the defense of insanity.
As noted in our discussion of assignment of error number one, the trial judge correctly instructed the jury in the substantive law with respect to determining the defense of insanity. Also, we find nothing in the record to substantiate defendant's contention as the record clearly reflects adequate instructions. Further, since the jury is not required to document specific reasons for reaching its verdict, defendant's allegation that the jury failed to apply the correct law is nothing more than mere speculation. Without evidence that it did not comply with the given instructions, this court cannot accept such speculation as fact.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant contends that the trial court erred in failing to charge the jury with the defendant's special request for instructions regarding mistrial.
The State and the defendant have a right before arguments begin to submit special written charges for the jury to the court. La.C.Cr.P. art. 807. The cited article provides that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and is wholly correct and pertinent. Also it adds, such charge need not be given if it is included in the general charge or in another special charge to be given.
In the instant case, the defendant, with the court's permission, made an oral motion to have a special charge given to the jury. More specifically, defendant requested that the jury be charged with the exact language of La.C.Cr.P. art. 775(2). As requested, the special charge would have read:
"A mistrial may be ordered, and in a jury case the jury dismissed when: the jury is unable to agree upon a verdict." La.C. Cr.P. art. 775(2).
The court denied defendant's request.
Defendant contends that such requested charge, being an exact quotation of the law, was wholly correct and did not require any qualification, limitation or explanation, and should have been given before the jury retired for its deliberations. We disagree. A special charge, although wholly correct, need not be given if it is not pertinent. It is never pertinent to charge a jury before it retires for deliberations that if they are unable to agree upon a verdict, a mistrial will be ordered. Such an instruction anticipates that the jury will be unable to reach a verdict, is clearly counter-productive and encourages a violation of the jury's sworn duty to reach a just determination of guilt or innocence.
Further, the requested charge is outside the scope of jury charges as defined by La.C.Cr.P. art. 802 which specifies that:
"The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence."
The United States Supreme Court has held that the trial judge's obligation in charging the jury is to charge the jury as to the law applicable to the offense charged and any other offense(s) which a juror could reasonably infer from the evidence. Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). The requested charge does not fall within the scope of that obligation. We find no merit in this assignment *1018 of error.[1]

ASSIGNMENT OF ERROR NO. 4
By this assignment of error, defendant contends that the trial court erred in failing to grant defendant's motion for a new trial and motion in arrest of judgment and motion for post verdict judgment of acquittal.
Defendant's combination motion, which the trial judge denied, was filed pursuant to La.C.Cr.P. arts. 821, 851 and 859. As a basis for these motions, defendant urges that the verdict is contrary to the law and evidence as his defense of insanity was substantiated by a preponderance of the evidence. He urges that viewing all of the evidence, in a light most favorable to the prosecution, a rational fact finder could not have concluded that defendant failed to prove insanity by a preponderance of the evidence. He further contends that even if a rational fact finder could find that the evidence did not establish insanity, the evidence showed that defendant lacked the mental ability to form a specific intent with respect to the conduct in question which would reduce his degree of culpability from second degree murder to manslaughter.
The defendant was charged and tried for second degree murder which is a violation of La.R.S. 14:30.1. That statute provides in pertinent part that: second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. Therefore, in order to convict the state had to prove, beyond a reasonable doubt, (1) the killing of a human being and, (2) that such killing occurred when defendant had a specific intent to kill or inflict great bodily harm. La.R.S. 14:10 defines specific intent as: that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:9 defines criminal consequences as any set of consequences prescribed in various articles of the Louisiana Criminal Code or other acts of the legislature as necessary to constitute any of the various crimes defined therein.
At defendant's trial, the State and the defense entered into the following stipulation:
"On July 4, 1987, Charles Bell shot his wife, Evelyn Bell, two times, once in the head and once in the left side of her back at the apex of the axilla, with a .25 caliber semi-automatic pistol belonging to Charlie Bell. This occurred in the family home of Charlie Bell and Evelyn Bell located in LaSalle Parish, Louisiana. Evelyn Bell died on July 14, 1987, as a result of the shooting. The shooting was not accidental nor was it due to negligence. Charlie Bell did not shoot Evelyn Bell in self-defense."
The defense attempted to negate defendant's culpability for his actions by proving insanity at the time of the offense. In order to establish defendant's insanity, the defense called three expert witnesses, Dr. Riaz Chaudhry, Dr. Robert Kendrick, and Dr. Sanit Sirikul.
Dr. Riaz Chaudhry, a medical doctor with a specialty in internal medicine who had been the defendant's and the victim's family doctor, testified he thought the defendant generally knew the difference between right and wrong. He added that defendant had extreme paranoia and distress. Dr. Chaudhry testified that about two months prior to the shooting, the victim advised him that she was afraid of defendant and that defendant was going to kill her. Dr. Chaudhry then stated that he thought defendant's paranoia had taken over his normal rationale such that he did not have control over himself with respect to his relationship with his wife. However, under cross-examination, Dr. Chaudhry admitted that he had neither examined nor spoken to defendant for more than two months prior to the killing and that he had not spoken with Bell since the shooting.
The second expert witness called by the defense, Dr. Sanit Sirikul, a psychiatrist, *1019 was appointed on a sanity commission to evaluate defendant. Dr. Sirikul testified that defendant had a good knowledge of right and wrong and appeared to be a law-abiding person; he did not show any mental retardation; and, he had no memory loss. Dr. Sirikul testified that he believed defendant had a psychosomatic disorder and was severely paranoid. Finally, this witness testified that he had no opinion relative to the defendant being insane at the time the offense was committed. Moreover, under cross-examination Dr. Sirikul testified that he could not say that it was more probable than not that defendant did not know right from wrong at the time the crime was committed.
Defendant's final expert witness, Dr. Robert Kendrick, a medical doctor with a general practice, testified that defendant had mental problemsparanoia, which may have affected his behavior at the time of the incident. The doctor stated that he was unsure as to whether defendant knew right from wrong at the time of the crime.
Several witnesses testified on the State's behalf regarding defendant's state of mind at the time the offense was committed.
Dr. I.C. Turnley, a medical doctor who examined the defendant in connection with the sanity commission, testified: "Generally speaking, I think he knew right from wrong. He told me he planned to do this". Also Dr. Turnley testified that if defendant took steps and planned it out, picked up his wife, got his gun, took his wife inside the house and shot her that would indicate that defendant was in touch with reality. He added that he thought everyone could have some variations in what we think reality is, but overall he felt that defendant knew what he was doing.
Dr. Joe Ben Hayes, a psychiatrist who examined the defendant pursuant to the defendant's own motion, testified that defendant was paranoid and depressed and that may have played a part in defendant's justifying, in his own mind, the shooting of his wife. However, he opined that defendant knew right from wrong and despite defendant's mental or emotional illness and possible organic brain syndrome, knew what he did and knew that it was wrong.
Finally, Dr. Robert Nickelson, a medical doctor with a specialty in internal medicine, a member of the sanity commission, testified that defendant was able to distinguish right from wrong at the time of the offense.
We find that the verdict in this case is not contrary to the law and the evidence. Viewing the evidence in a light most favorable to the State, we conclude that any rational trier of fact could have determined that the defendant knew the difference between right and wrong at the time he shot his wife and, accordingly, that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense.
For these same reasons, we find no merit in defendant's contention that the State failed to establish, beyond a reasonable doubt, that he specifically intended to kill or do great bodily harm to the victim. Louisiana does not recognize the doctrine of diminished capacity. Therefore, a mental defect or disorder short of legal insanity cannot serve to negate specific intent and thus reduce the degree of a crime. Evidence of a defendant's mental capacity at a trial where insanity is raised as a defense is presented for use in determining whether the defendant was legally insane at the time the offense was committed. It is not relevant to determining the issue of specific intent. State v. Jones, 359 So.2d 95 (La.1978), cert. denied, 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708 (1978); State v. Pravata, 522 So.2d 606 (La.App. 1st Cir. 1988), writ denied, 531 So.2d 261 (La.1988).
This assignment of error is without merit.
For the above and foregoing reasons, the conviction and the sentence imposed are affirmed.
AFFIRMED.
NOTES
[1] In passing, we observe that, prior to the conclusion of the jury's deliberations, the trial judge, in response to a question from the jury on the number needed to be in agreement in order to reach a verdict, informed the jury of the provisions of Article 775(2).