554 So.2d 271 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jake A. ASHWORTH, Jr., Defendant-Appellant.
No. CR89-338.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1989.
*272 Richard A. Morton, DeRidder, for defendant-appellant.
William C. Pegues, III, Dist. Atty., DeRidder, for plaintiff-appellee.
Before DOMENGEAUX, YELVERTON and KING, JJ.
KING, Judge.
Numerous issues are presented by this appeal but the main issue is whether defendant's statement was free and voluntary.
Jake A. Ashworth, Jr. (hereinafter defendant) was charged by bill of information on June 26, 1987 with one count of attempted *273 simple burglary, a violation of La.R.S. 14:27 and 14:62; one count of simple burglary, a violation of La.R.S. 14:62; and one count of theft, a violation of La.R.S. 14:67. Defendant was found mentally incapable of proceeding to trial on October 29, 1987 and was committed to the Feliciana Forensic Facility. On May 31, 1988, the trial judge found defendant had regained his mental capacity to stand trial. On October 21, 1988, defendant was tried before a jury which unanimously found defendant guilty as charged. After a sentencing hearing, the trial judge sentenced defendant to serve a term of six years at hard labor for attempted simple burglary, ten years at hard labor for simple burglary, and two years at hard labor for theft. All sentences were ordered to run concurrently. Defendant appeals his conviction and sentence, urging seven assignments of error. We affirm.

FACTS
On the night of May 1, 1987, defendant broke a window of Adam's Building Supply, Inc., a business located in DeRidder, Louisiana. Because he was unable to enter the building through the broken window, defendant proceeded to the building next to Adam's Building Supply, Inc., which housed another place of business. He broke into this second business and took between $160.00 and $170.00.
Defendant was arrested on June 8, 1987 for these crimes, advised of his legal rights, and booked into jail. While held in a cell at the Beauregard Parish Jail, defendant stopped Sergeant Ricky Anderson and stated that he wanted to talk about some of the incidents that had occurred. Sergeant Anderson brought defendant to the police department. Defendant then gave a written statement in the presence of Sergeant Anderson, a patrolman, Kenneth Spitzer, and the Chief of Police, Alvin Malone. This statement was given on the day of arrest, June 8, 1987.
On October 29, 1987, a hearing was held to determine defendant's capacity to stand trial. The reports of three doctors, Dr. Etienne R. Brown and Dr. S.P. Ghanta of DeRidder, Louisiana, and Dr. Gillis R. Morin of Lake Charles, Louisiana, were introduced into evidence. The trial court found that defendant was not capable of proceeding to trial or aiding in his own defense and committed defendant to the Feliciana Forensic Facility. Defendant later regained his mental capacity and, on May 31, 1988, the trial judge found defendant capable of standing trial.
On September 12, 1988, the defendant, having originally pled not guilty to all three charges, changed his plea to not guilty and not guilty by reason of insanity.
Defendant then moved to suppress his statement of June 8, 1987. The hearing on the motion to suppress was held, in part, on October 12, 1988, and completed on October 20, 1988, the date of trial. The trial judge denied defendant's motion to suppress and, after a two day jury trial, defendant was convicted as charged. Defendant appeals his conviction urging seven assignments of error.
(1) The trial court erred in denying defendant's pro se Motion for Bill of Particulars which was filed on or about July 22, 1988;
(2) The trial court erred in denying defendant's Motion to Suppress his statement made on June 8, 1987, and in allowing the statement to be admitted into evidence at trial;
(3) The trial court erred in denying defendant's Motion for Mistrial which was based upon the improper and prejudicial remarks of the prosecuting attorney during his closing arguments, which Motion for Mistrial was made immediately following the trial court's instructions to the jury;
(4) The trial court erred in denying defendant's Motion for Mistrial which was based upon the trial court's heavy-handed interrogation and intimidation of Dr. Supriya P. Ghanta during the hearing on defendant's Motion to Suppress his statement, which Motion was made immediately following the trial court's instructions to the jury;
(5) The trial court erred in denying defendant's Motion for New Trial in that *274 the jury verdict was contrary to the law and the evidence;
(6) The trial court erred in denying defendant's Motion for Post-Verdict Judgment of Acquittal in that defendant sustained his burden of proving that he was legally insane at the time of the offense and the evidence, even when viewed in a light most favorable to the State, does not reasonably permit a finding of guilty; and
(7) The trial court erred in sentencing defendant to an excessive sentence which amounts to cruel and unusual punishment, in light of defendant's history of mental illness.

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends, by this assignment of error, that the trial court erroneously denied his pro se motion for a bill of particulars which was filed on July 22, 1988.
In a handwritten letter filed with the Clerk of Court, defendant requested a bill of particulars for the crimes with which he had been charged. The trial court denied his motion, stating that defendant's request was untimely and that defendant had shown no good cause why additional time should be allowed. Under La.C.Cr.P. Art. 484 and Art. 521, a motion for a bill of particulars must be filed within fifteen days after arraignment unless a longer time is granted by the court, or unless there is a showing of good cause. The granting or refusal of a bill of particulars is within the discretion of the trial court and will not be disturbed unless a clear abuse of discretion is shown. La.C.Cr.P. Art. 484; State v. Burch, 365 So.2d 1263 (La.1978).
Defendant did not file his motion within the time permitted by law, nor did he show good cause why the time for filing should have been extended. He did not reurge his motion particularizing his request after its denial. We also note that defendant was represented by capable counsel at the time he filed this motion in proper person. Under these circumstances, the trial court did not abuse its discretion in denying defendant's pro se motion for a bill of particulars. We find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends that the trial court erred in denying defendant's motion to suppress the statement he made to the police on June 8, 1987, and in allowing that statement to be admitted into evidence at trial. Defendant argues that because he suffers from schizophrenia and is a borderline retardate that these mental conditions precluded him from making a knowing, intelligent, and voluntary waiver of his constitutional rights.
Before the State may introduce into evidence what purports to be a confession or statement of a defendant, it must first affirmatively show that it was freely and voluntarily given and was not made under the influence of fear, duress, menaces, threats, inducements, or promises. La.C. Cr.P. Art. 703(G); La.R.S. 15:451; State v. Benoit, 440 So.2d 129 (La.1983); State v. Golmon, 536 So.2d 481 (La.App. 1 Cir. 1988); State v. Toups, 499 So.2d 1149 (La. App. 5 Cir.1986), writ den., 501 So.2d 772 (La.1987). In addition, if the statement was made during custodial interrogation, the State must prove that the accused was advised of his Miranda rights and intelligently and voluntarily waived those rights. La. Const. Art. 1, § 13 (1974); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Coleman, 395 So.2d 704 (La.1981); State v. Toups, supra.
We note that, to meet its burden, the State may rely on the presumption of sanity provided in La.R.S. 15:432. State v. Golmon, supra. Because of this presumption, the defendant has the burden of proving a mental defect which renders him unable to understand his rights and, therefore, incompetent to waive them. State v. Glover, 343 So.2d 118 (La.1976); State v. Golmon, supra. The State is not required to negate a defendant's mental abnormality, but it must prove beyond a reasonable doubt that the confession or statement a defendant gave was voluntary. The defendant must then prove the existence of a *275 mental defect or disorder that prevented his confession or statement from being intelligently and voluntarily made. State v. Glover, supra; State v. Golmon, supra. However, the law is clear that when the issue on appeal is whether an accused's level of intellectual capacity precludes him from effectively understanding the essential nature of his right to remain silent, to have assistance of counsel, and of the consequences of his speech, much discretion is accorded to the trial court's determination. State v. Lefevre, 419 So.2d 862 (La.1982); State v. Coleman, supra; State v. Mire, 492 So.2d 180 (La.App. 3 Cir.1986), writ den., 496 So.2d 347 (La.1986).
In this case, the record supports the trial judge's determination that defendant's inculpatory statement was admissible. The three police officers who witnessed defendant's statement testified that defendant was advised of his Miranda rights, appeared to understand his rights, and voluntarily waived those rights. We find it important and note that all three police officers who witnessed defendant's confession had known and dealt with the defendant on previous occasions. They knew how he usually acted, and all three testified that he seemed no different than usual. None of the police officers felt defendant did not understand his rights when he waived them. We also note that the defendant had previous experience with the criminal justice system and that his legal rights had been explained to him on other occasions.
The defendant introduced the testimony of Dr. Ghanta and Dr. Morin to attempt to prove that he did not have the mental capacity to knowingly and intelligently waive his constitutional rights at the time of his confession.
Although both Dr. Ghanta and Dr. Morin testified that defendant suffers from schizophrenia and has a low IQ, both also testified that defendant's schizophrenia could be controlled with medication, and that defendant would understand his constitutional rights if he were not in a delusional or hallucinating state. Both Dr. Ghanta and Dr. Morin expressed the opinion that defendant possibly could have been delusional when he gave his statement, especially if he was not taking his medication, but neither doctor could say what his condition was on June 8, 1987 when he gave his statement. In sum, the doctors' testimony was that defendant was schizophrenic and mentally retarded, but that whether he could understand his rights and could voluntarily waive them at a particular time depended on whether or not he was delusional, and that the doctors did not know if defendant was delusional on June 8, 1987.
Though we accept the fact that defendant is schizophrenic and has a borderline IQ, this does not mean that defendant cannot freely and voluntarily give a statement and effectively waive his legal rights. The critical question is whether defendant, at the time he gave his statement, had a mental illness or defect which prevented his statement from being intelligently and voluntarily made. See, State v. Benoit, supra; State v. Glover, supra; State v. Toups, supra. From our review of the evidence in the record, we find that defendant did not prove by a preponderance of the evidence that he could not understand and, therefore, could not intelligently and voluntarily waive his constitutional rights on June 8, 1987.
Defendant argues that the facts in State v. Glover, supra, are so similar to those in his case that, like in Glover, the conclusion must be reached that defendant lacked the mental capacity to give a free and voluntary statement. However, though we admit the facts in these two cases are similar, the record in Glover did not reflect that the defendant in that case was on any medication to control his psychosis. State v. Glover, supra, at page 132. In the present case, the defendant has been in and out of mental institutions on several occasions, and defendant was attending a mental health clinic at the time of his offense. He had prescriptions for medications and received his medication from the clinic. Defendant did not show that he was not on his medication on June 8, 1987. He did not testify that he was not taking his medicine, nor did he offer any evidence that he was not taking his medication. While Dr. Ghanta *276 did testify that defendant probably was not on his medication and that defendant had not obtained medicine from the clinic for four months before the giving of his statement, Dr. Ghanta, nevertheless, had no real knowledge that defendant was not taking his medicine or that he had no medicine. We, therefore, conclude that the trial court did not commit error in finding that defendant did not carry his burden of proving that his mental illness more likely than not prevented him from knowingly waiving his rights.
We cannot say that the trial court erred in concluding that the State did carry its burden of proving beyond a reasonable doubt that defendant's statement was free and voluntary. The officers present when defendant gave his statement were convinced that defendant knew what he was doing when he waived his rights. The defendant's statement itself is coherent and does not evidence any lack of understanding, and, finally, we note, as the Supreme Court did in State v. Coleman, supra, that:
"The opinions of experts on the question of `waiver' of constitutional rights may be helpful, but are certainly not binding on the trial court. The decision on the validity of a waiver is ultimately one for the court. Experts in psychiatric medicine or psychology can give opinions on an accused's mental ability to perform certain functions, but the court must decide whether the accused, with the described mental ability, has the capacity to stand trial or the capacity to waive rights. The concept of `knowing' and `intelligent' waiver is one which our jurisprudence has developed. See State v. Glover, above; State v. Trudell, [350 So.2d 658 (La.1977) ], above. There is no controlling psychiatric principle. See State v. Bennett, 345 So.2d 1129 (La. 1977), in which this court cautioned trial courts not to base judgments regarding capacity to stand trial only on conclusory opinions of experts unsupported by enumerated factors.
Just as in cases in which the accused's capacity to stand trial is at issue, the trial court's judgment must be accorded much deference in cases involving an accused's capacity to waive rights ..." State v. Coleman, 395 So.2d 704 at page 709 (La.1981).
After reviewing the record, we conclude that the trial court's determination that the defendant knowingly waived his right against self-incrimination and freely and voluntarily gave his statement is supported by the evidence and is not in error. Therefore, we find this assignment of error to have no merit.

ASSIGNMENT OF ERROR NUMBER 3
In Assignment of Error Number 3, defendant argues that his motion for a mistrial, based on the State's inflammatory and prejudicial remarks during its closing arguments, should have been granted.
Specifically, defendant objects to the prosecutor's comments that if defendant was found not guilty by reason of insanity, a contradictory hearing would promptly be held to determine whether defendant could be discharged or released on probation, and at that hearing, defendant "... would put some doctors upon this stand saying that he was as sane as anyone."
In State v. Williams, this court stated:
"In order to raise this issue on appeal, the defense must have made a timely objection during the trial. At no point during the prosecutor's closing argument did the defense object to the alleged prejudicial remarks. Generally, the defense cannot avail itself of an error which was not objected to at the time of its occurrence. LSA-C.Cr.P.Arts. 841, 920." State v. Williams, 524 So.2d 1221, at pages 1231-1232 (La.App. 3 Cir.1988), writ den., 530 So.2d 93 (La.1988).
Defense counsel made no contemporaneous objection to the purported prejudicial remarks made by the prosecuting attorney during his closing argument, nor did he request an admonition or rectifying instruction from the bench. Rather, defense counsel waited until the jury had been instructed and had been excused from the courtroom to deliberate before moving for a mistrial on the basis of the prosecutor's *277 closing argument. For this reason, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 4
By this assignment of error, defendant contends that the trial court's heavy-handed interrogation and intimidation of Dr. Supriya P. Ghanta during the hearing on defendant's motion to suppress his statement of June 8, 1987 warranted a mistrial because Dr. Ghanta was intimidated by the trial judge and, therefore, altered her testimony at the trial on the merits.
Our review of the record does not support defendant's claim. The only issue at the hearing on the motion to suppress was whether defendant was mentally competent to have freely, knowingly, and voluntarily given his statement. In the denial of defendant's motion for mistrial, the trial judge stated that he believed that, since the jury was not present, he was entitled to try to elicit what he considered pertinent and relevant information. The trial judge further stated that he only wanted to find out if Dr. Ghanta had an opinion concerning whether defendant had the mental capacity to give a free and voluntary statement on June 8, 1987. We note that when Dr. Ghanta testified before the jury, the trial judge made no comment and asked no questions.
We find no error with the trial judge's questions of Dr. Ghanta at the hearing on the motion to suppress. Dr. Ghanta's testimony at the hearing on the motion to suppress was evasive at best. The record shows that the trial judge was only trying to elicit information from Dr. Ghanta which he considered relevant, namely, the defendant's state of mind at the time he gave his statement. The record also shows that the trial judge made no comment and asked no questions at the trial on the merits during Dr. Ghanta's testimony. We, therefore, find this assignment of error lacking in merit.

ASSIGNMENTS OF ERROR NUMBERS 5, 6, and 7
Concerning these assignments of error, defense counsel, in his appellate brief, makes no reference to facts in the record and cites no legal authorities in support of his assertions.
The Uniform Rules of the Courts of Appeal, Rule 2-12.4, states in pertinent part that the appellant in his brief shall give accurate citations of the pages of the record and the authorities cited. This rule further requires:
"The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed."
The substance of Rule 2-12.4 is also supported in the jurisprudence. An appeal that lacks any form of proper brief on an assigned error is considered abandoned. Zoning Bd. of City of Hammond v. T.A. R.C., 510 So.2d 751 (La.App. 1 Cir.1987), writ den., 515 So.2d 445 (La.1987). Failure to argue a particular point in a brief relative to an allegation of error constitutes waiver of that argument. Bordelon v. Cochrane, 533 So.2d 82 (La.App. 3 Cir. 1988), writ den., 536 So.2d 1255 (La. 1989). Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3 Cir. 1983). Therefore, we will not consider these assignments of error on appeal finding that they have been abandoned.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.